**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**BARRETT, HAENTJENS & CO.**

**Civ. No. 87–1532.**

United States District Court,
M.D. Pennsylvania.

Feb. 19, 1988.

On Motion for Summary Judgment
July 22, 1988.

On Motion for Reconsideration
Sept. 7, 1988.

Barbara Kosik, Asst. U.S. Atty., Scranton, Pa., Christopher Bullard, Spencer H. Lewis, Jr., Lanier E. Williams, E.E.O.C., Philadelphia, Pa. (Charles A. Shanor, Philip B. Sklover, E.E.O.C., Washington, D.C., of counsel), for plaintiff.

Dona S. Kahn, Harris & Kahn, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Currently before the court is defendant's motion for summary judgment based on the running of the applicable statute of limitations. For the reasons that follow, the court will permit the parties to present additional information prior to ruling on the motion.

### Background

Plaintiff, the Equal Employment Opportunity Commission (EEOC), filed this action on November 2, 1987 pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. sections 621–634, "to correct unlawful employment practices on basis of age and to make whole Thomas Casagrande, Charles Woodring, Norbert Wersinger and Oliver Eisenhower." *See* document 1 of record, at p. 1. The four named employees were discharged on February 2, 1984 and were allegedly replaced by younger employees. *See* document 4 of record, Exhibits A, B, C, and F. Plaintiff alleges that the employees were discharged from their jobs because of their ages. *See* document 1 of record, at p. 1.

Defendant filed a motion for summary judgment on December 4, 1987. *See* document 3 of record. Defendant contends that "plaintiff did not file the complaint within the statute of limitations as required for a violation of the ADEA, and the tolling for conciliation does not make the complaint timely." *See id.* at p. 3. Plaintiff filed a brief in opposition to defendant's motion on December 21, 1987, and defendant filed a reply brief on January 8, 1988. *See* documents 4 and 5 of record, respectively. This matter is now ripe for disposition.

### Discussion

When examining a motion for summary judgment, the court must view all facts in the light most favorable to the party opposing the motion. *Betz Laboratories, Inc. v. Hines,* 647 F.2d 402, 404 (3d Cir.1981). If there exists a genuine issue as to any material fact, summary judgment must be denied. Fed.R.Civ.P. 56(c). A fact is materi-

al if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citing 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* section 2725, at pp. 93–95 (1983). In addition, summary judgment will not lie if the dispute about a material fact is "genuine," that is, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In opposing a motion for summary judgment, a party may not rest on the allegations in his complaint. Instead, the party must present evidentiary affidavits or risk having the undisputed statements contained in the movant's affidavits taken as true. *See* Fed.R.Civ.P. 56(c); *see also Sierra v. Lehigh County Pennsylvania*, 617 F.Supp. 427, 429 (E.D.Pa.1985).

The ADEA incorporates the statute of limitations contained in the Portal–to–Portal Act. *See* 29 U.S.C. section 626(e)(1). Section 6 of the Portal–to–Portal Act provides as follows:

Any action ... to enforce any cause of action ... may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C. section 255(a). The ADEA further provides that the statute of limitations will be tolled "[f]or the period during which the [EEOC] is attempting to effect voluntary compliance with requirements of this chapter through informal methods of conciliation, conference, and persuasion ...., but in no event for a period in excess of one year." 29 U.S.C. section 626(e)(2).

In its brief in opposition to defendant's summary judgment motion, plaintiff makes three main arguments. First, plaintiff argues that Congress did not intend that the one year period of conciliation could be ended prematurely by an employer's intran-

sigence, but instead intended that the tolling period remain in effect for one full year after conciliation is invoked. Second, plaintiff alleges that the actual period of conciliation in this case was sufficient to make this action timely. Last, plaintiff contends that the complaint is timely under a continuing violation theory. These arguments will be addressed *in seriatim.*

■ Plaintiff first argues that Congress intended that the tolling period remain in effect for one full year after conciliation is invoked. Both the statute and the case law that interprets it belie this argument. Section 7(e)(2) provides as follows:

*For the period during which the Equal Employment Opportunity Commission is attempting to effect voluntary compliance with requirements of this chapter through informal methods of conciliation, conference, and persuasion pursuant to subsection (b) of this section, the statute of limitations as provided in section 255 of this title shall be tolled, but in no event for a period in excess of one year.*

29 U.S.C. section 626(e)(2). The courts that have interpreted this section have rejected the contention "that the tolling period ends only when the EEOC sends a letter to a potential defendant stating that conciliation has failed and otherwise runs for an automatic one year after conciliation begins." *Equal Employment Opportunity Comm. v. Colgate–Palmolive Co.*, 586 F.Supp. 1341, 1345 (S.D.N.Y.1984); *see also Vuksta v. Bethlehem Steel Corp.*, 540 F.Supp. 1276, 1280 n. 13 (E.D.Pa.1982), *aff'd*, 707 F.2d 1405 (3d Cir.1983), *cert. denied*, 464 U.S. 835, 104 S.Ct. 121, 78 L.Ed.2d 119 (1983); *Pfister v. Allied Corp.*, 539 F.Supp. 224, 227 (S.D.N.Y.1982); *EEOC v. State of Kansas*, 28 Fair Empl. Prac. Cas. (BNA) 1036, 1038 (D.Kan.1982).

Plaintiff cites no case authority in support of its position. Instead, it relies exclusively on the legislative history of the Act. As stated by plaintiff,

There is not one word in the legislative history of the Amendments to the ADEA that manifests the intention, either expressly or impliedly, that it would be left

to the employer, to determine when conciliation had ended. Were such the intention of Congress, there would have been no reason to establish a time limit for the settlement process because the employer could be counted upon to end conciliation before the enforcement bureau had obtained "unfounded concessions" from it. *See* document 4 of record, at p. 10.

While the court finds the legislative history surrounding the amendments to the Act to be inconclusive, the following passage is informative:

> Various courts have held that the failure to comply with the conciliation requirement in section 7(b) requires dismissal of the lawsuit. Some courts have gone so far as to say that conciliation is a "jurisdictional prerequisite" to bringing a lawsuit under the Act....

> It is the committee's intent that the conciliation requirement in section 7(b) should not be so rigidly applied ... The claim of discrimination ought to be decided on the merits through litigation in the event conciliation process fails.

> In order to assure that such resolution on the merits will occur, the legislation provides that the statute of limitations will be tolled during conciliation carried out pursuant to section 7(b).

> *It is the intent of this amendment to prevent those who have violated the Act from delaying and postponing conciliation and thereby possibly avoiding liability.*

Senate Comm. on Human Resources, Age Discrimination in Employment Act Amendments of 1978, S.Rep. No. 95–493, 95th Congr., 2nd Sess. 1, *reprinted in* 1978 U.S.

Code Cong. & Admin.News 504, 516; *see also* 123 Cong.Rec. 34,317 (1977) ("My amendment would give the parties *up to 2 additional years*[1] to resolve their differences in informal negotiations. *That is probably more time than will be needed in most instances*") (emphasis added). These statements, while not resolving the issue, support the conclusion that the statute of limitations is not automatically tolled for the entire one year period.

■ Plaintiff next argues that, even if plaintiff is not entitled to a tolling of the statute of limitations for one year in all circumstances, the conciliation that did take place sufficiently tolled the statute to make the present suit timely. Given the present state of the record, the court is unable to decide this issue. The court will therefore permit the parties to file supplemental affidavits.

The parties do not contest the fact that the cause of action accrued on February 2, 1984.[2] *See* document 3 of record, at p. 3; document 4 of record, at p. 2. Defendant assumes *arguendo* "that plaintiff will be able to sustain its burden of proof as to its allegation of a willful violation," *see* document 3 of record, at p. 3, thus making applicable the three year statute of limitations. *See* 29 U.S.C. sections 255(a), 626(e)(1). The suit was filed on November 2, 1987. *See* document 1 of record. Thus, in order for this suit to be timely, the period of conciliation must have been at least 273 days in length.[3]

The conciliation process begins upon the issuance of a letter of violation by plaintiff. *See* document 4 of record, Exhibit G (letter

---

1. During the Senate debate over H.R. 5383, the predecessor of P.L. 95–256, Senator Domenici proposed a two-year limitation on the period during which the statute of limitations would be tolled pending conciliation. *See* 123 Cong.Rec. 34,316–34,317 (1977). While this amendment was agreed to by the Senate, *see id.* at 34,317, the time period was reduced to one year by the Committee of Conference. *See* 124 Cong.Rec. 6844, 7882–7883, 8217 (1978).

2. The complaint alleges that the unlawful practices occurred "[s]ince at least February 1, 1984...." *See* document 1 of record, at p. 3. "Defendant does not dispute this date since the

parties were all notified the first week of February, 1984." *See* document 3 of record, at p. 3 n. 1. Since the discharge notices themselves are dated February 2, 1984, *see* document 4 of record, Exhibits A and B, the court will use that date.

3. If the cause of action accrued on February 2, 1984, plaintiff's three years were up on February 2, 1987, since February 1, 1987 fell on a Sunday. *See* F.R.C.P. 6(a). From February 2, 1987 to November 2, 1987 is a period of 273 days, excluding February 2, 1987 but including November 2, 1987. *See id.*

of violation); *see also* H.Conf.Rep. No. 95–950, 95th Cong., 2nd Sess. 13, *reprinted in* 1978 U.S.Code Cong. & Admin.News 504, 528 ("The conferees agree that it is appropriate for the tolling of the statute of limitations to begin when the Department of Labor states, in a letter to the prospective defendant(s), that it is prepared to commence conciliation pursuant to section 7(b) of the act"); *Equal Employment Opportunity Comm. v. Colgate–Palmolive Co.*, 586 F.Supp. at 1343–1345. Here, a letter of violation was issued on July 8, 1986. Thus, for the suit to have been timely filed, conciliation must have continued through April 7, 1987.

Exhibit 2 to defendant's motion for summary judgment, *see* document 3 of record, is a letter from defendant's counsel to Rae T. Balaban, an investigator for the EEOC, dated February 3, 1987. The letter reads, in pertinent part, as follows:

During our phone conversation in which I informed you of the Gabrielle settlement, you informed me that the EEOC was now interested in discussing settlement in connection with other persons, unnamed, (I assume you mean Woodring, Wersinger, and Casagrande), notwithstanding the fact that the only people who filed charges were Ancharski and Gabrielle.

You have never raised the possibility of settlement of "claims" of these other people to me before this week. I indicated to you that I could not immediately respond to your question of settlement since I have no knowledge of the parameters of EEOC's demands or their alleged demands and I had never discussed the issue with my client.

I have spoken to the President of the company today and we are unwilling to pay any moneys to these persons who have not filed their own charges. I am really surprised that you are pursuing this matter....

In any event, we do not intend to make any offer for the other persons, so you can advise your superiors that we are not interested in commencing any conciliation discussions on this matter.

Exhibit 3 to the same document is an affidavit from defendant's counsel. She states the following: "After I sent the February 3, 1987, letter to the EEOC, I had no further substantive discussions about conciliating the claims of Messrs. Casagrande, Woodring, Wersinger, or Eisenhower with any member of the EEOC staff." *See* document 3 of record, Exhibit 3, at p. 2, para. 3.

Plaintiff, in turn, attached an affidavit from Balaban. She states the following:

2. Some time in the middle of February, 1987, Dona Kahn called me to ask the status of the Gabrielle case as it related to the class members. At this time I discussed possible settlement for the class with her. She wanted to know how much back pay would be involved. I told her I would find out where the file was and call her back. I called Christopher Bullard, an attorney assigned to this case, who informed me that the file had already been sent to Washington, D.C. for review.

3. Within the next few days I called Dona Kahn back to inform her that the case had been sent to Washington with a recommendation for litigation for the class.

4. I talked to her about conciliation for the class again and said I couldn't compute the back pay because the file was in Washington, D.C. but if she was interested in settling for the class, I would call Washington and have them return the file to me. She told me not to do this yet because she would have to speak to Mr. Haentjens first about settlement.

5. Within a week or so, I heard from her that he wasn't interested in settling the class.

*See* document 4 of record, Exhibit I, at pp. 1–2, paras. 2–5. Reading this in the light most favorable to plaintiff, the non-moving party, the conciliation process terminated near the end of February 1987. As stated previously, conciliation would have had to have continued through April 7, 1987. Since conciliation seemingly ended approximately five weeks too early, the present

suit was filed approximately five weeks too late.

In its opposing brief, however, plaintiff makes certain allegations that are not contained in the accompanying affidavits. For example, plaintiff's brief contains the statement that Balaban believed conciliation remained open because of the Ancharski and Gabrielle settlements and because she and defense counsel had a conversation about settlement after the February 3, 1987 letter, near the end of February. *See* document 4 of record, at pp. 14–15. In addition, the brief states that Balaban told Kahn that she would remain available to conciliate the case at the time of their last conversation near the end of February of 1987. *See id.* at p. 15. If Balaban actually made such a statement, plaintiff's counsel should know that it belongs in the affidavit, under penalty of perjury, and not obscured by way of argument in a brief.

Given that these statements are not contained in an affidavit, it would be within the province of this court to simply ignore them. *See Helmich v. Kennedy,* 796 F.2d 1441, 1443 (11th Cir.1986); *Moorhead v. Millin,* 542 F.Supp. 614, 617 (D.V.I.1982); *Sims v. Mack Truck Corp.* 488 F.Supp. 592, 597 (E.D.Pa.1980) (citing *Tunnell v. Wiley,* 514 F.2d 971 (3d Cir.1975)) ("Self-serving statements of fact in a party's brief, not in proper affidavit form, may not be considered in determing if a genuine issue of material fact exists"). The court, on the other hand, may require the parties to file supplemental affidavits. *See, e.g., Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir.1980); *Season–All Industries, Inc. v. Turkiye Sise ve Cam Fabrikalari,* 425 F.2d 34 (3d Cir.1970). Here, the latter alternative will be employed.

Within fifteen (15) days from the date of this Order, plaintiff may, if it desires, file a supplemental affidavit from Rae Balaban or some other interested party that specifically addresses the factual allegations made in plaintiff's brief. The affidavit must be made under oath or in accordance with 28 U.S.C. section 1746. It should also address what, if any, steps were taken regarding conciliation, assuming Balaban

made the statement to Kahn near the end of February of 1987 that she would remain available to conciliate the case. Defendant will be given ten (10) days following plaintiff's submission to file a responsive supplemental affidavit, if it so desires.

■ Plaintiff's final argument is that this suit is timely under the theory of a continuing violation. *See* document 4 of record, at pp. 16–17. Relying on *Equal Employment Opportunity Comm. v. Westinghouse Electric Corp.,* 725 F.2d 211 (3d Cir.1983), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984), plaintiff argues that defendant "had set forth on an illegal policy of eliminating the positions of older employees," which policy did not end until April 2, 1984, when Neil Gabrielle was discharged. *See id.* at p. 16. According to plaintiff, "[i]f the statute of limitations in this case did not begin to run until April 2, 1984 and conciliation was terminated by Kahn's letter of February 3, 1987, then the complaint is timely." *Id.* Again, the court must reject plaintiff's argument.

According to the Supreme Court in *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980), to determine the timeliness of an EEOC complaint, a court must "identify precisely the 'unlawful employment practice' of which [plaintiff] complains." Here, plaintiff clearly identifies the employment practice of which it complains in its complaint, which reads as follows:

### STATEMENT OF CLAIMS

7. Since at least February 1, 1984 the Defendant Employer has engaged in unlawful employment practices at its Hazleton, Pennsylvania facility in violation of Section 4(a) of the ADEA, 29 U.S.C. Section 623(a) by discharging Thomas Casgrande [sic], Charles Woodring, Norbert Wersinger and Oliver Eisenhower from their jobs because of their age.

8. The effect of the policies and practices complained of above has been to deprive Thomas Casagrande, Charles Woodring, Norbert Wersinger and Oliver Eisenhower of equal employment oppor-

tunities and otherwise adversely affect their status as employees because of age.

9. The unlawful practices complained of above were and are willful within the meaning of the ADEA.

*See* document 1 of record, at p. 3, paras. 7–9; *see also id.* at p. 1. No mention is made of the subsequent discharge of Neil Gabrielle, nor is the action brought on behalf of the four named employees and all employees similarly situated. *Cf. Westinghouse Electric Corp.*, 725 F.2d at 220 (suit filed on behalf of "Paul Meola, Jane Doe, Richard Roe, and other similarly situated employees"). Thus, plaintiff's argument "cannot be squared with the allegations of the complaint." *Delaware State College v. Ricks*, 449 U.S. at 257, 101 S.Ct. at 504, 66 L.Ed.2d 431.

*Westinghouse Electric Corp.*, the only case that plaintiff cites in support of its continuing violation theory, is distinguishable from the present case. There, the court stated as follows:

A denial of Layoff Income and Benefits (LIB) could not occur until an employee was eligible to apply for LIB and until the claim was denied due to eligibility for early retirement. An employee did not have an enforceable demand until the claim was denied.... As stated earlier, to be *eligible* for LIB, an employee had to have been laid off as a result of plant closing. Thus, this case is in a different factual setting than *Ricks.* Although the alleged unlawful practice was the adoption and implementation of the policy, a cause of action could not accrue until the discrimination manifested itself by virtue of the policy actually being applied to individual employees at the time of the plant closing through individual LIB claim rejections.... In this case, the plant closed on April 1, 1977. Thus, at the earliest, the statute begins to run as of that date. An April 1, 1977 starting date makes this action timely if a three-year statute applies.

*Westinghouse Electric Corp.*, 725 F.2d at 219 (citations omitted); *cf. Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 473 (D.C. Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) ("A severing of the employment relationship ordinarily terminates a discrimination against the severed employee, and activates the time period for filing charges with the Commission concerning any violation which occurred at separation or which may have been continuing up to the date thereof. To hold otherwise would effectively read the timely-filing requirement out of the statute"). In the present case, a cause of action for Casagrande, Woodring, Wersinger, and Eisenhower clearly accrued on February 2, 1984, the date their services were terminated. Assuming that conciliation ended on February 3, 1987, a February 2 starting date makes this action untimely.

Finally, the court concludes that defendant's actions cannot be deemed "continuing." "To be considered continuing in nature, ... the discrimination may not be limited to isolated incidents but [must] pervade[ ] a series or pattern of events which must continue within the filing period." *Milton v. Weinberger*, 645 F.2d 1070, 1076 (D.C.Cir.1981) (quoting *Laffey v. Northwest Airlines, Inc.*, 567 F.2d at 473). Here, Neil Gabrielle filed a charge of discrimination with plaintiff on December 29, 1984. *See* document 4 of record, Exhibit C. None of the four employees named in plaintiff's complaint filed a similar charge. The maximum time period for filing a charge with the EEOC is 300 days. *See* 29 U.S.C. section 626(d)(2). In the 300 days preceding Gabrielle's filing, the only allegedly discriminatory act revealed by the record is the discharge of Gabrielle himself. If the four individuals named in the present complaint are considered, there are only two discrete acts of alleged discrimination, the terminations on February 2, 1984 of Casagrande, Wersinger, Woodring, Eisenhower, and Ancharski,[4] and the termination of Gabrielle on April 2, 1984. This hardly

---

**4.** Ancharski was discharged at the time that Casagrande, Wersinger, Woodring, and Eisonhower were discharged. He filed a separate charge of discrimination with the EEOC, although the record does not reveal when that charge was filed. *See* document 4 of record, at p. 4 n. 1.

constitutes a pervasive series or pattern of events within the filing period. *See Milton v. Weinberger, supra; Laffey v. Northwest Airlines, Inc., supra.*

It is important to note that the four named individuals in the present complaint are not attempting to join a suit filed by Ancharski or Gabrielle, the only employees to have filed charges with the EEOC. *Cf. Anderson v. Montgomery Ward & Co.,* 631 F.Supp. 1546 (N.D.Ill.1986) ("individuals who fail to file timely EEOC charges may join an ADEA action brought by similarly situated plaintiffs if at least one plaintiff's timely EEOC charge is sufficient to notify the employer and the EEOC of the circumstances surrounding the additional claims, and if those seeking to join could have filed their own timely EEOC charges at the time the plaintiff's charge was filed"); *Fressell v. AT & T Technologies, Inc.,* 35 Fair Empl.Prac.Cas. (BNA) 658 (N.D.Ga.1984) [1984 WL 1002] (employees whose ADEA charges were not filed within 100 days after employer promoted younger employees may not rely on timely charges filed by two other employees). Both Ancharski and Gabrielle previously filed suit in this court, and both cases were settled prior to trial. *See Gabrielle v. Barrett, Haentjens & Co.,* No. 86–0475 (M.D.Pa. closed Jan. 27, 1987) (Nealon, C.J.); *Ancharski v. Barrett, Haentjens & Co.,* No. 84–1731 (M.D.Pa. closed July 31, 1985) (Caldwell, J.). Here, the named employees are attempting to save their action by arguing a continuing violation and by latching on to Gabrielle's timely EEOC filing. Under the facts of this particular case, the court will not permit them to do so.

An appropriate Order will enter.

### ORDER

Now, this 19th day of February, 1988, in accordance with the reasoning set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) Within fifteen (15) days from the date of this Order, plaintiff may file a supplemental affidavit from Rae Balaban or some other interested party that specifically addresses the factual allegations contained in plaintiff's brief as well as what steps were taken regarding conciliation following Balaban's alleged statement to Kahn near the end of February 1987 that she would remain available to conciliate the case.

(2) Defendant may, within ten (10) days following plaintiff's submission, file a responsive supplemental affidavit.

### ON MOTION FOR SUMMARY JUDGMENT

Currently before the court is defendant's motion for summary judgment based on the running of the applicable statute of limitations. For the reasons that follow, the court will deny the motion.

### BACKGROUND

The complete factual and procedural history of this case is contained in this court's Memorandum and Order of February 19, 1988. *See* document 7 of record. In that Memorandum, the court discussed plaintiff's three arguments in opposition to defendant's motion for summary judgment based on the running of the statute of limitations. While the court rejected two of those arguments, it was unable to decide plaintiff's contention that the conciliation that took place between the parties sufficiently tolled the statute of limitations to make the present suit timely. *See id.* at pp. 7–12. While the court found that plaintiff's affidavits were insufficient to create a genuine issue of material fact as to the timeliness of the suit, it believed that certain statements found in plaintiff's brief in opposition to the summary judgment motion and attributed to an EEOC investigator, Rae T. Balaban, if actually made by her, could create such an issue. Rather than ignore those statements, the court granted plaintiff fifteen (15) days to file a supplemental affidavit. *Id.* at pp. 9–12.

Plaintiff filed a supplemental brief on March 11, 1988. *See* document 8 of record. That brief contains a supplemental affidavit from Balaban that reads, in pertinent part, as follows:

(1) At the time that I had my last conversation with Dona Kahn, Esq. in February of 1987, I told Ms. Kahn that the Commission was always open to settling cases.

(2) At the time of my last conversation with Dona Kahn, Esq. in February, 1987, I was aware that under Section 260.4 of the *EEOC Compliance Manual* I was obligated to remain available to conciliate this case until the lawsuit was actually filed.

(3) During my last conversation with Dona Kahn, Esq., in February 1987, after she told me that Respondent did not wish to settle, I said to her words to the effect that, "If she changed her mind about settlement we would be open for conciliation up until the time the Commission filed its' lawsuit." At no time did I tell her that conciliation efforts had failed or terminated.

(4) Because I did not have the case file at my desk when I spoke to Dona Kahn, Esq. in February of 1987 I was not able to make notes in the case log about these conversations. I have, thus, relied on my memory of these conversations.

(5) In my experience as an investigator, other representatives for respondents have absolutely refused to settle cases and yet have agreed to settlements immediately before the lawsuit was filed.

*See* document 8 of record, Exhibit 1. Plaintiff also brought to the court's attention a recent decision from the United States District Court for the District of New Jersey, *Equal Employment Opportunity Comm. v. Rhone–Poulenc, Inc.*, 677 F.Supp. 264 (D.N.J.1988), which this court will discuss *infra*. Defendant filed a reply brief on March 25, 1988, arguing that Balaban's supplemental affidavit was insufficient to create a genuine issue of material fact. *See* document 10 of record.

Subsequently, on April 7, 1988, President Reagan signed into law the Age Discrimination Claims Assistance Act of 1988. *See* document 13 of record, Exhibit A. The purpose of that Act was to "extend the statute of limitations applicable to certain claims under the Age Discrimination in Employment Act of 1967 that were filed with the Equal Employment Opportunity Commission before the date of enactment of this Act." *Id.* at p. 1. The parties were then required to file briefs on the applicability of the Act to the present controversy. *See* document 11 of record. Plaintiff filed its brief on April 29, 1988, arguing that the Act was applicable and that it makes the complaint timely. *See* document 13 of record. Defendant took the opposite position in its brief, submitted on May 19, 1988. *See* document 14 of record. Both parties then filed reply briefs, plaintiff on June 2, 1988 and defendant on June 10, 1988. *See* documents 15 and 16 of record, respectively. This matter is now ripe for disposition.

## DISCUSSION

In *Equal Employment Opportunity Comm. v. Rhone–Poulenc, Inc., supra,* the court was faced with a similar issue and factual setting. In denying the defendant's motion for summary judgment based on the running of the statute of limitations, the court stated as follows:

The EEOC is entitled to a tolling of the two or three year statute of limitations for the period during which it is attempting conciliation. 29 U.S.C. § 626(e)(2). Defendant argues that the tolling can only occur for that period during which the EEOC is actively attempting conciliation. The defendant maintains that in this action the EEOC is only entitled to a tolling period from the date of the Letter of Violation, September 8, 1986, until the December 8, 1986 letter indicating that the matter was being referred to the Legal Department. . . .

Plaintiff contends that conciliation did not terminate on December 8, 1986. Plaintiff points out that the letter of December 8, 1986 indicates that the charge was referred to the Legal Department "for further consideration *as part of our conciliation process.*" (Plaintiff's Exhibit 8) (emphasis added). The letter goes on to say "[t]o date we have

been unable to effectuate an agreement for this charge *but we are still interested in receiving a suitable proposal."* (Emphasis added). These statements do not indicate a termination of conciliation, rather they indicate that the EEOC continues to be open to any voluntary settlement suggestions by the defendant.... In the case now before the court the December 8, 1986 letter does not contain any statement that conciliation attempts are being terminated nor has the EEOC stated that as of the date of the letter it considered attempts to conciliate over. The court finds that it does not at this time have sufficient evidence before it to determine that as of December 8, 1986 the EEOC had terminated its conciliation process and that the tolling period had ended. The fact that defendant did not respond to the December 8, 1986 letter with a new proposal for a settlement with the EEOC, does not necessarily mean the conciliation period was brought to a close.

*Id.* at 266–267.

In the instant case, reading the record in the light most favorable to plaintiff, the non-moving party, after defendant stated that it was not interested in settling the class, Balaban informed defendant that the EEOC was always open to settling cases and that she would remain open for conciliation up until the time the Commission filed its lawsuit in case defendant changed its position regarding settlement. *See* document 8 of record, Exhibit 1. At no time did Balaban state to defendant that conciliation efforts had failed or terminated. *Id.* Balaban also stated that, in her experiences as an investigator, other representatives for companies have absolutely refused to settle cases and yet have agreed to settlements immediately prior to the filing of a lawsuit. *Id.* As in *Rhone–Poulenc,* this court is unable to conclude that plaintiff had terminated its conciliation process in February of 1987.

Defendant argues that *Rhone–Poulenc* is distinguishable because the employer in that case did not tell the EEOC that it did not wish to conciliate. The court must disagree. While this court in its previous Memorandum rejected the notion "that the tolling period ends only when the EEOC sends a letter to a potential defendant stating that conciliation has failed and otherwise runs for an automatic one year after conciliation begins," *see* document 7 of record, at pp. 4–5, it has never endorsed the conclusion that conciliation automatically ends when an employer states that it is not interested in settling a case. The court will therefore deny defendant's motion for summary judgment on the ground that this action is barred by the statute of limitations.[1]

An appropriate Order will enter.

## ON MOTION FOR RECONSIDERATION

Currently before the court is defendant's motion for reconsideration of this court's Order of July 22, 1988. Defendant's motion was filed on August 11, 1988. *See* document 19 of record. M.D. Local Rule 412 provides that "[a]ny motion for reconsideration or reargument *shall* be filed within ten (10) days after the entry of the judgment, order or decree." (Emphasis added.) Defendant's motion is untimely and will be denied on that basis.

The motion would fare no better were the court to consider it on its merits. Defendant's motion is based on a perceived conflict between this court's Memoranda and Orders of February 19, 1988 and July 22, 1988. *See* documents 7 and 17 of record. As stated by defendant,

The Court appears to have taken the position that only EEOC can terminate the conciliation process. This conflicts with the Court's statement in the First Memorandum rejecting the contention that tolling ends only when the EEOC

---

1. One of the conditions of the Age Discrimination Claims Assistance Act of 1988 is that "a civil action on such claim was not brought by the Commission or [an aggrieved] person before the running of the statute of limitations." *See* document 13 of record, Exhibit A, at p. 3. As the court has concluded that the present action was timely filed for purposes of the summary judgment motion, the court need not consider at this time the applicability of the Act.

sends a letter to the employer stating that conciliation has failed.

What is important to note is that even though Ms. Balaban stated that she would remain open to conciliate, she made no further conciliation efforts. It is undisputed that no further conversation or communications were held. What the Court has done is to allow an automatic tolling, even though there were no efforts whatsoever to conciliate subsequent to Ms. Balaban's statement. The fact that no efforts to conciliate were made supports the conclusion that the conciliation process ended in February of 1987, and, therefore, the filing of the suit was untimely.

*See* document 19 of record, at p. 3.

The court sees no conflict. In its first memorandum, the court rejected the conclusion that the tolling period ends only when the EEOC sends a letter to a potential defendant stating that conciliation has failed and otherwise runs for an automatic one year after conciliation begins. *See* document 7 of record, at pp. 4–5. In its second opinion, the court rejected the opposite extreme, namely, "that conciliation automatically ends when an employer states that it is not interested in settling a case." *See* document 17 of record, at pp. 6–7. Again, the court sees no conflict.

The court must also reject defendant's conclusion that the court has created a *de facto* automatic tolling period. Defendant's view of the conciliation process is too mechanical and focuses solely upon the period from February 7, 1987, when the EEOC's investigator last spoke to counsel for defendant about settling the case, until November 2, 1987, when this action was filed. A process is a systematic series of actions directed to some end. For present purposes, conciliation is the end. Just as the court does not believe that the time between settlement discussions should be excluded from the tolling period,[1] tolling should not be deemed ended on the date of the last conversation, especially when one

party states that it will remain open for further settlement negotiations.

The facts of this case supports such a conclusion. As stated in the first memorandum, for this suit to have been timely filed, conciliation must have continued through April 7, 1987. *See* document 7 of record, at p. 8. After several weeks of negotiations regarding settlement of this dispute, the parties last spoke at the end of February, 1987. At the end of this conversation, the EEOC's investigator stated that she would remain open for conciliation up until the time the commission filed its lawsuit in case defendant changed its position regarding settlement. *See* document 8 of record, Exhibit 1. The court believes that the "remaining open" for conciliation should last for a reasonable amount of time and that the short period involved here of approximately five weeks (*i.e.*, late February to April 7, 1987) constitutes a reasonable time. Thus, this court cannot conclude *as a matter of law* that the present action is untimely.

The court must return to its original conclusion, that is, that summary judgment on the issue of the running of the statute of limitations is not appropriate in this case. While the court can easily imagine extreme circumstances where, based on the totality of the circumstances, including the passage of an unreasonable period of time, an employer is so intransigent or the EEOC takes such a disinterest in conciliation that a conclusion that the tolling period for conciliation should be ended would be justified, no such circumstances are here present. Defendant's motion for reconsideration of this court's Memorandum and Order of February 19, 1988 will therefore be denied.

NOW, this 7th day of September, 1988, IT IS HEREBY ORDERED THAT defendant's motion for reconsideration is denied.

---

1. For example, if the parties spoke on February 10, 1988, and again on February 20, 1088, it would be absurd to argue that the intervening days should not be included for purposes of the one year tolling period.