**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**BRITRAIL TRAVEL INTERNATIONAL CORPORATION, Defendant.**

**Civ. A. No. 89–2372.**

United States District Court,
D. New Jersey.

March 20, 1990.

Danny Elmore, E.E.O.C., Philadelphia, Pa., for plaintiff.

Alan S. Goldberger, Goldberger & Goldberger, Clifton, N.J., for defendant.

## OPINION

LECHNER, District Judge.

This is an age discrimination suit commenced 22 May 1989 by the Equal Employment Opportunity Commission ("EEOC") under the Age Discrimination in Employ-

ment Act of 1967, 29 U.S.C. § 621, *et seq.*, as amended (the "ADEA"). The complaint alleges the termination of certain employees on 27 March 1987 by defendant Britrail Travel International Corporation ("Britrail") violated the ADEA. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1343, 1345. Presently before the court is Britrail's motion for summary judgment.[1]

*Facts*

The events leading to this action began in February of 1987. In that month Britrail implemented a reorganization plan in order to cut the costs of its operations. EEOC Brief, Exhibit A; Fallon Aff., Exhibit B. As part of the reorganization, Britrail terminated twelve employees. EEOC Brief, Exhibit A. Among the twelve terminated were four on whose behalf the EEOC brings this suit: Gennaro Vezza ("Vezza"), James S. Sleith ("Sleith"), Fred Martin ("Martin") and Richard Pocklington ("Pocklington") (collectively, the "terminated employees").

Britrail set the date of their termination as 27 March 1987. Martin and Sleith were given notice of this termination by a letter, dated 17 February 1987. Vezza and Pocklington were given notice of termination by a letter, dated 20 February 1987. Fallon Aff., Exhibit B.

On 13 August 1987, Vezza filed with the EEOC charges of age and sex discrimination against Britrail. EEOC Brief at 3; Saskor Aff. at 3. The EEOC began an investigation of Vezza's discharge by Britrail. It issued a letter of determination on 17 November 1988; it found no basis for Vezza's sex discrimination charges. However, the EEOC did find evidence of violations of the ADEA. EEOC Brief, Exhibit A at 3. The report noted:

prior to the reorganization, Respondent [Britrail] employed twenty-two (22) sales persons; four (4) of whom were under

---

1. In support of its summary judgment motion, Britrail submitted the following: Defendant's Brief in Support of Summary Judgment Motion ("Britrail Brief"); Defendant's Reply Brief ("Reply Brief"); Affidavit of Paul S. Owens with Exhibits A–C ("Owens Aff."); Affidavit of Gregory W. Fallon with Exhibits A–B ("Fallon Aff."); Affidavit of Ludwig A. Saskor with Exhibits A–J

("Saskor Aff."); Rule 12(G) Statement of Material Facts ("Britrail Facts").

The EEOC submitted the following in opposition: Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment with Exhibits A–D ("EEOC Brief"); Affidavit of Rita Epperson attached to the EEOC Brief as Exhibit C ("Epperson Aff.").

age forty (40), and eighteen (18) were ages forty (40) and older. All twelve (12) of the persons laid off were over forty (40) years, and the four (4) persons who were under forty (40) years were all retained.

EEOC Brief, Exhibit A at 2.

The EEOC found that in Vezza's region there were three sales persons. Vezza was the oldest of the three, at age sixty-one. *Id.* The two other employees who were not terminated were twenty-eight and fifty-five years of age. The EEOC determined Vezza was more experienced than the younger of the two retained employees. *Id.* The report informed Vezza he had a right to ask for a review of the EEOC's decision but also warned:

If the Charging Party [Vezza] does not timely request a review by the date shown above [1 December 1988], this determination will become final the following day and the Commission will thereafter begin conciliation efforts to resolve all matters where there is reason to believe that violations have occurred.

EEOC Brief, Exhibit A at 3.

Vezza never requested a review of the EEOC's determination and it became "final" on 2 December 1988. Owens Aff., ¶ 5; Britrail Facts, ¶ 7. The letter of determination was sent to Britrail making it aware that conciliation discussions were an option after 1 December 1988. Epperson Aff., ¶ 5.

Britrail's attorney in the EEOC matter was Paul S. Owens ("Owens"). Owens Aff., ¶ 1. Owens spoke to EEOC attorney Rita Epperson ("Epperson") on 12 December 1988. *Id.,* ¶ 6. Epperson asked if Britrail was interested in beginning conciliation discussions regarding all twelve terminated employees mentioned in the EEOC determination letter. *Id.* Owens did not know Britrail's position and so Epperson told Owens that Britrail had until 30 December 1988 to inform the EEOC of its decision on conciliation discussions. *Id.*

Britrail did not contact the EEOC until 6 January 1989 when Owens called the EEOC to ask about conciliation procedures and was informed that the conciliation discussions would include all twelve terminated employees. Epperson Aff., ¶ 6. On either 9 January or 11 January 1989 Owens again contacted the EEOC and told Epperson that although Britrail was willing to enter conciliation discussions regarding Vezza, it would not discuss the other terminated employees. *Id.,* ¶ 7; Owens Aff., ¶ 8. On 19 January 1989 Epperson informed Owens "that the EEOC was not interested in conciliating just on behalf of Mr. Vezza." Owens Aff., ¶ 9.

On 26 January 1989, as advised by Epperson, the EEOC sent a letter to Britrail. Fallon Aff., Exhibit B; Epperson Aff., ¶ 8. The letter to Britrail was the last contact between the EEOC and Britrail. Fallon Aff., ¶ 3; Owens Aff., ¶ 10. The letter reads as follows:

On January 25, 1989 the case file for the above-referenced charge was referred to our Legal Department for further consideration as part of our conciliation process.

As you know, the Equal Employment Opportunity Commission (EEOC) is empowered to accept all offers of substantial relief as determined by the circumstances of a given charge. To date we have been unable to effectuate an agreement for this charge but *we are still interested in receiving a suitable proposal.* In the event you wish to make an offer, you may do so by contacting Rita D. Epperson....

Fallon Aff., Exhibit A (emphasis added).

On the same day it sent the letter to Britrail, the EEOC sent a letter to Vezza (the "Vezza Letter"), stating:

The Equal Employment Opportunity Commission (EEOC) has determined that *its efforts to date to conciliate this charge have been unsuccessful.*

Therefore, although we will continue to attempt to resolve this matter through conciliation, the case has been referred to our Regional Attorney for review to determine whether the EEOC will bring a civil action in Federal District Court based on your charge. You will be informed of the EEOC's decision, but *it is*

*likely that EEOC will file suit on your behalf.*

Owens Aff., Exhibit B (emphasis added). The EEOC did not communicate with Britrail again to attempt to conciliate or conference the matter. Owens Aff., ¶ 12. Britrail did not respond to the EEOC's letter of 26 January 1989.

Before the EEOC filed the present motion, Vezza brought a private suit against Britrail in the Southern District of New York (the "Vezza Action"). Britrail moved to stay or dismiss the Vezza Action based on the EEOC filing of the present action. Owens Aff., ¶ 15. If the case *sub judice* is dismissed for failure to comply with the statute of limitations, Britrail will withdraw its motion, and the litigation of the Vezza Action will continue in the Southern District of New York. *Id.*, ¶ 17.

The EEOC filed this action on 22 May 1989.[2] During a 15 September 1989 status conference, the EEOC made a motion orally for leave to amend its complaint. Saskor Aff., ¶ 5. After the issue was briefed, Magistrate Ronald J. Hedges granted the EEOC motion to amend. The only substantive difference between the complaint and the amended complaint is the addition of a demand for a trial by jury and a new paragraph. The new paragraph is added under "Statement of Claims and Allegations" and reads: "The unlawful employment practices complained of above were and are willful within the meaning of the ADEA." Amended Complaint, ¶ 10. No new allegations or factual claims are contained in the Amended Complaint. Nothing is offered to substantiate the charge of willfulness. Britrail now moves for summary judgment claiming the EEOC failed to comply with the applicable statute of limitations.

*Discussion*

A. *Summary Judgment Standard*

To prevail on a motion for summary judgment, the moving party must establish "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The district court's task is to determine whether disputed issues of fact exist, but the court cannot resolve factual disputes in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). All evidence submitted must be viewed in a light most favorable to the party opposing the motion. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Although the summary judgment hurdle is a difficult one to overcome, it is by no means insurmountable. As the Supreme Court has stated, once the party seeking summary judgment has pointed out to the court the absence of a fact issue,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'

*Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (emphasis in original, citations and footnotes omitted).

The Court elaborated on the standards for summary judgment in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted): "If the evidence [submitted by a party opposing summary judgment] is merely colorable ... or is not significantly probative ... summary judgment may be granted." The Supreme Court went on to note in *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (footnote omitted): "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." Thus, once

---

**2.** The docket sheet indicates 22 May 1989 as the date the original complaint was filed. Curiously, the EEOC's Brief states 1 June 1989 as the date of filing. EEOC Brief at 1.

a case has been made in support of summary judgment, the party opposing the motion has the affirmative burden of coming forward with *specific* facts evidencing a need for trial. *See* Fed.R.Civ.P. 56(e).

### B. *The Statute of Limitations*

The parties do not differ on any important dates in calculating the statute of limitations. Their argument is over tolling provisions of the ADEA and whether a two or three year statute of limitations applies in this instance. The difference arises because the ADEA incorporates by reference the statute of limitations provided in the Portal-to-Portal Act of 1947. 29 U.S.C. § 626(e).

The statute mandates a two year statute of limitations for violations of the ADEA unless the violation is "willful," in which case a party is allowed three years to bring suit. 29 U.S.C. § 255(a); *E.E.O.C. v. Westinghouse Elec. Corp.*, 869 F.2d 696, 712 (3d Cir.1989), *vacated on other grounds*, —— U.S. ——, 110 S.Ct. 37, 107 L.Ed.2d 7 (1989); *E.E.O.C. v. Westinghouse Elec. Corp.*, 646 F.Supp. 555, 561 (D.N.J.1986). The EEOC argues it filed its complaint in a timely fashion even if the two year statute of limitations applies but also contends Britrail's actions were willful.

### 1. *Two Year Statute of Limitations*

■ The statute of limitations began to run when the terminated employees were unequivocally notified of Britrail's actions. *Delaware State College v. Ricks*, 449 U.S. 250, 259, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1981). The EEOC does not contest that the terminated employees' cause of action arose on 17 February 1987 (for Martin and Sleith) and 20 February 1987 (for Vezza and Pocklington). EEOC Brief at 7–8.

■ The EEOC filed this action on 22 May 1989, more than two years after the action accrued. The EEOC rests its argument that the action was timely filed upon

the tolling provisions provided in 29 U.S.C. § 626(e)(2). That section states, in pertinent part:

> For the period during which the Equal Employment Opportunity Commission is *attempting* to effect voluntary compliance with requirements of this chapter *through informal methods of conciliation, conference, and persuasion* pursuant to subsection (b) of this section, the statute of limitations as provided in section 255 of this title shall be tolled, but in no event for a period in excess of one year.

*Id.* (emphasis added). The EEOC notes it is statutorily commanded to attempt informal conciliation of ADEA claims.[3]

As the record demonstrates, the period for conciliation began the day after the EEOC determination letter became final, 2 December 1989. At various points during the following two months, the two sides discussed settlement negotiations. *See, e.g.*, Owens Aff., ¶¶ 5–13. By letter, dated 26 January 1989, the EEOC advised Britrail "as part of [its] conciliation process" it was sending the matter to its legal department. Fallon Aff., Exhibit A. The EEOC's Vezza Letter states the EEOC would attempt resolution of the matter through further conciliation, but that "it is likely that the EEOC will file suit on [Vezza's] behalf." Owens Aff., Exhibit B. The EEOC acknowledged in the Vezza Letter that "its efforts to conciliate this charge have been unsuccessful." *Id.*

The only evidence of an attempt to conciliate, conference or persuade by the EEOC on or after 26 January 1989 is a statement in the letter, dated 26 January 1989, sent to Britrail that "we [the EEOC] are still interested in receiving a suitable proposal. In the event you wish to make an offer, you may do so by contacting Rita D. Epperson." Fallon Aff., Exhibit A. It is undisputed that the EEOC did not communicate with Britrail in any way between 26 Janu-

---

**3.** 29 U.S.C. § 626(b) states, in pertinent part: Before instituting any action under this section, the Equal Employment Opportunity Commission shall *attempt* to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter *through informal methods of conciliation, conference, and persuasion.*
*Id.* (emphasis added).

ary 1989 and the filing of suit on 22 May 1989. At oral argument, counsel for the EEOC conceded there was no evidence in the record of any move to conciliate, conference or persuade by the EEOC after 26 January 1989.[4]

Nevertheless, the EEOC contends that because it notified Britrail it was open to receive an offer and did not definitively end efforts at conciliation, the statute of limitations continued to toll from 2 December 1989 until the filing of suit in May 1989.

The parties rely primarily on two cases in their tolling arguments: *E.E.O.C. v. Colgate–Palmolive*, 586 F.Supp. 1341 (S.D.N.Y.1987), and *E.E.O.C. v. Rhone–Poulenc, Inc.*, 677 F.Supp. 264 (D.N.J.1988), *aff'd*, 876 F.2d 16 (3d Cir.1989). The parties do not cite *E.E.O.C. v. Barrett, Haentjens & Co.*, 705 F.Supp. 1065 (M.D.Pa.1988), although it is similar to the instant case.[5]

In *Colgate–Palmolive*, the EEOC contended, as it does here, that all it need do to toll the statute of limitations is to begin conciliation and thereafter the statute of limitations would be extended by the full one year indicated in section 626(e)(2). This theory was rejected in *Colgate–Palmolive* and is rejected here. 586 F.Supp. at 1345. The EEOC argued there, as well as here, that it remained open to negotiation and so the conciliation period continued. The *Colgate–Palmolive* court found the conciliation period had been ended by the EEOC.

The *Colgate–Palmolive* court had different correspondence before it than is before this court or for that matter was before the *Rhone–Poulenc* court. In *Colgate–Palmolive*, the court specifically noted that the EEOC had taken actions and made statements indicating it had ended the period of conciliation. *Id.* In the instant case, the EEOC argues it did not indicate an intention to end the conciliation process. However, the EEOC did acknowledge in the Vezza Letter that its attempts to conciliate were unsuccessful and further that it was likely the EEOC would file suit on behalf of Vezza. Owens Aff., Exhibit B.

Although the letter to Britrail, dated the same date as the Vezza Letter, indicates a willingness to accept further proposals from Britrail, it is equally clear the EEOC was of the opinion further conciliation would be unsuccessful. This is highlighted by the fact that the EEOC did nothing to "*attempt* to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance ... through *informal methods of conciliation, conference, and persuasion.*" 29 U.S.C. § 626(b) (emphasis added). After 26 January 1989, the EEOC made no attempt to conciliate and placed all the initiative for any conciliation into the hands of Britrail.

In *Rhone–Poulenc* the EEOC held a conciliation conference at which "specific financial settlements were discussed." *Id.*, 677 F.Supp. at 266. After the conference,

---

**4.** At oral argument counsel stated no action was taken by the EEOC after 26 January 1989:

> THE COURT: I understand all that. What happened after the 26th of January?
> MR. ELMORE: Your Honor, the EEOC formally—what happened, the EEOC still considered that defendant had the opportunity to come back and revise his decision with regard to backpay for Mr. Veza.
> THE COURT: It's your position that because the EEOC said you can come back to us with an offer, that equates to conciliation, conference or persuasion?
> MR. ELMORE: Yes, your Honor.

Transcript of 26 February 1990 Hearing ("Tr.") at 10. Later, counsel reiterated its position:

> THE COURT: ...
> On January 26 didn't you say, "We're open to offers, we'll receive one, we'd like to conciliate"?
> MR. ELMORE: Yes, your Honor.

> THE COURT: Nothing else happens and you're telling me that writing the letter, the EEOC then buys itself up to a year with that letter?
> MR. ELMORE: Basically, your Honor, yes.

*Id.* at 12.

**5.** Neither party cited the Third Circuit's opinion in *Rhone–Poulenc* stating why the district court decision was affirmed. In its affirmance the Third Circuit noted the statute tolled while the EEOC is *"attempting conciliation." E.E.O.C. v. Rhone–Poulenc, Inc.*, 876 F.2d 16, 17 (3d Cir. 1989) (emphasis in original) (quoting *Rhone–Poulenc*, 677 F.Supp. at 266). The Circuit also noted the EEOC need not provide documentation of conciliation on behalf of each potential claimant. *Id.* Here, the EEOC has admitted no further conciliation efforts occurred after 26 January 1989.

the EEOC sent Rhone–Poulenc the same form letter it sent Britrail in this case.[6] The *Rhone–Poulenc* court stated:

> The court finds that it does not at this time have sufficient evidence before it to determine that as of December, 1986 [the date of the form letter] the EEOC had terminated its conciliation process and that the tolling period had ended. The fact that defendant did not respond to the Dec. 8, 1986 letter with a new proposal for a settlement with the EEOC does not necessarily mean the conciliation period was brought to a close.

*Id.* at 267. One element in *Rhone–Poulenc* significantly absent in this case is that conciliation efforts started by the EEOC were continued by the individual plaintiff's attorney. *Id.*[7]

In *Barrett* the EEOC filed a complaint on 2 November 1987. The employees who had allegedly been terminated in violation of the ADEA were fired on 2 February 1984. The EEOC argued that the tolling period automatically tolled for one year after conciliation was invoked. *Barrett*, 705 F.Supp. at 1067. It argued further that even if that were not so, the actual period of conciliation in that case tolled the statute sufficiently to make filing of suit timely. *Id.*[8] *Barrett*, like *Rhone– Poulenc* and *Colgate–Palmolive*, rejects the contention that any attempt, regardless of its brevity, tolls the statute of limitations and it is rejected here. The court in *Barrett* was unwilling to state, however, that the EEOC's form letter was insufficient to maintain the tolling period for five weeks.

In *Barrett*, after rejecting the EEOC's first and third arguments, the court allowed more briefs and affidavits on the EEOC's claim that the actual tolling period was long enough to make the filing timely.

705 F.Supp. at 1072. The affidavit submitted there (the "Balaban Affidavit") is similar to the Eppinger Affidavit the EEOC has submitted here. One notable exception is that Balaban telephoned the defendant and told it the EEOC was open for conciliation if it decided it wished to settle. Here we have no such oral communication.

*Barrett* and *Rhone–Poulenc* are thus distinguishable from this case. Neither of them had the equivalent of the Vezza Letter before them. *Rhone–Poulenc* had the added factor of the employee's attorney continuing conciliation talks. *Barrett* also had an EEOC discussion with defendants informing them of the EEOC's position.

Under the facts here the conciliation period lasted from 2 December 1988 until 26 January 1989, a total of fifty-six days. After discussions with Britrail, the EEOC sent a letter stating they were open to offers but nowhere stating they would get back to Britrail. The Vezza Letter states that litigation is *likely* not possible, but probable. Although the Vezza Letter stated the EEOC would continue to attempt conciliation, it did not do so. In actuality the burden for whatever conciliation was to occur in this matter was placed upon Britrail.

The congressional command is to toll the statute while the EEOC is "attempting to effect voluntary compliance ... through informal methods of conciliation, conference and persuasion." 29 U.S.C. § 626(e)(2). After 26 January 1989 the record reveals the EEOC did not take any action indicative of an *attempt* to conciliate, conference or persuade. The extent of its actions was to say "call us if you like, we won't call you."

---

**6.** Counsel stated at oral argument that the letters in this case are forms the EEOC routinely sends. There is no indication the *Rhone–Poulenc* court had before it a letter similar to the Vezza Letter.

**7.** Britrail also argues that the present case differs from *Rhone–Poulenc* because the only conciliation efforts here were phone calls to discuss possible conciliation topics. However, as noted in *Rhone–Poulenc*, "as long as the EEOC made an *attempt* to conciliate, 'the form and sub-

stance of those conciliations is within the discretion of the EEOC.'" *Id.*, 677 F.Supp. at 266 (quoting *E.E.O.C. v. KECO Industries, Inc.*, 748 F.2d 1097, 1102 (6th Cir.1984)) (emphasis added). The EEOC's phone calls were attempts to conciliate.

**8.** The EEOC also argued suit was timely on a theory of continuing violation. In the case *sub judice* this argument is not made.

To accept the EEOC's position on tolling would be to violate congressional intent and to transform a two and three year statute of limitations into a three and four year statute. If the EEOC argument were to be accepted under the facts in this case, the mere act of sending a form letter would automatically toll the statute by one year.

Conciliation is an important part of the ADEA. The Third Circuit has stated that the purpose of the notice provisions of the ADEA is "to encourage *meaningful* conciliation." *Lusardi v. Lechner*, 855 F.2d 1062, 1078 (3d Cir.1988) (emphasis added). Other courts have recognized the ADEA's *primary* emphasis is on conciliation to resolve disputes. *Marshall v. Sun Oil Company of Pennsylvania*, 592 F.2d 563, 565 (10th Cir.1979), *cert. denied*, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979); *McLaren v. Emory University*, 705 F.Supp. 563, 565 (N.D.Ga.1988).

Moreover, the legislative history of the ADEA is clear that conciliation is the preferred mode of obtaining compliance. The House Report on the ADEA states:

> It is intended that the responsibility for enforcement vested in the Secretary by section 7, *be initially and exhaustively directed through informal methods of conciliation, conference, and persuasion and formal methods applied only in the ultimate sense.*

H.R. No. 805, 90th Cong., 1st Sess., 1967 U.S.Code Cong. & Admin.News, 2213, 2218 (emphasis added) (quoted in *Sun Oil*, 592 F.2d at 565).

Accepting the EEOC's position in light of the facts in this case would undermine this congressional purpose. Instead of encouraging meaningful conciliation, the rule suggested by the EEOC would reward *pro forma* efforts lacking in any substance. The entire burden of attempting conciliation, which Congress explicitly placed on the EEOC, would shift to an employer. The EEOC, far from having to promote conciliation, would merely be required to refrain from hostility to a defendant's proposals.

The cause of action accrued at the latest on 20 February 1987. The statutes of limitations ran on 20 February 1989 without tolling. However, the record demonstrates negotiations continued for fifty-six days. Thus, had suit been filed by 17 April 1989, it would have been timely. The case was actually brought 22 May 1989, five weeks after the statute had run.[9]

To hold otherwise would violate congressional purposes for the ADEA in two ways. First, it would convert a two or three year statute of limitations into a three or four year statute automatically on the posting of a form letter. Second, it would discourage meaningful conciliation efforts so vital to the ADEA scheme.[10] *See Lusardi*, 855 F.2d at 1078. The EEOC has not met the two year statute of limitations required by the ADEA.

## 2. *Willful Violation of the ADEA*

Even if the two year statute of limitations did not toll sufficiently to make the filing timely, the EEOC contends Britrail committed a willful violation and a three year statute of limitations applies. There is no dispute that willful violations of the ADEA are provided a three year statute of limitations nor do the parties dispute that suit was filed within the three year limit.

---

**9.** In *Barrett,* the EEOC's letter had to toll the statute of limitations for five weeks in order for filing to be timely. The court would not state, as a matter of law, that it did not. 705 F.Supp. at 1075. However, in this case after 26 January 1989 all attempts to conciliate ended. If the EEOC is not attempting to conciliate, tolling ceases. To that extent this opinion disagrees with *Barrett.*

**10.** The court appreciates the EEOC, like many government agencies, may well be overworked, underfunded and understaffed. However, the record discloses, and counsel concedes, *no* ef-

fort was made at conciliation after 26 January 1989. No form letter was sent, no call was made, nothing was done. As one court has commented on the necessity of bring ADEA suits in a timely fashion: "Lord and Congress help those who help themselves." *Platt v. Burroughs Corp.,* 424 F.Supp. 1329, 1335 (E.D.Pa. 1974) (quoted in *Vuksta v. Bethlehem Steel Corp.,* 540 F.Supp. 1276, 1280 (E.D.Pa.1982)), *aff'd,* 707 F.2d 1405 (3d Cir.1983), *cert. denied,* 464 U.S. 835, 104 S.Ct. 121, 78 L.Ed.2d 119 (1983).

However, Britrail contends it is entitled to summary judgment on the issue of willfulness and so the complaint was not timely filed.

The two tiered liability scheme of the ADEA, allowing liquidated damages and longer statutes of limitations periods for willful violations, requires that not every violation of the ADEA is entitled to the heightened remedies provided. *Bartek v. Urban Redevelopment Auth. of Pittsburgh*, 882 F.2d 739, 745 (3d Cir.1989); *E.E.O.C. v. City of Mt. Lebanon, Pa.*, 842 F.2d 1480, 1487 (3d Cir.1988); *Dreyer v. Arco Chemical Co., Div. of Atl. Ritchfield*, 801 F.2d 651, 657 (3d Cir.1986), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987). To show willfulness, a plaintiff is required to prove more than would be required for a violation of the ADEA. *Bartek*, 882 F.2d at 745.

■■■ The Third Circuit requires in disparate impact cases that a finding of willful violation of the ADEA "be supported by evidence of *outrageous* conduct that was not merely duplicative of that evidence needed for awarding compensatory damages." *Id.* (emphasis in original); *Dreyer*, 801 F.2d at 658.[11] Usually, the willfulness analysis is an ad hoc inquiry into the particular circumstances of the case and it is unrealistic to expect an exhaustive list of the factors involved. *Dreyer*, 801 F.2d at 658. However, case law has focused on three indicia particularly relevant to the inquiry: (1) whether discharging the employee denied him imminent pension benefits, (2) whether there have been previous violations of the ADEA, (3) whether there was a systematic purging of older employees. *Bartek*, 882 F.2d at 745. Comments by the employer and other employees are also useful in the analysis but not necessarily dispositive. *Id.* at 745–46.

■■■ Applying the outrageous behavior standard here,[12] the EEOC has failed to demonstrate a genuine issue of material fact. It is undisputed Britrail has no previous ADEA violations and the terminated employees were not denied imminent pension benefits. The record is also devoid of comments by anyone at Britrail and certainly none that would support a charge of willful violation of the ADEA.

The EEOC rests its entire claim of willfulness on its own determination of Vezza's charge with the EEOC. EEOC Brief, Exhibit A. It is undisputed Britrail had a one time reorganization reducing its distribution regions from three to four and eliminating employee positions in the fourth region. *Id.* at 2. Britrail also does not dispute that it originally employed twenty-two persons, only four of whom were under forty years of age. The twelve persons to lose their jobs were all over the age of forty.

The EEOC states that this evidence is enough to raise a genuine issue of material fact. Here, as in *Dreyer,* there is no allegation or evidence that the reorganization plan was a pretext to fire the terminated employees. 801 F.2d at 658. The only evidence produced as to a particular terminated employee is Vezza. There is nothing on the record as to the circumstances surrounding the other complained of terminations. The record shows Britrail retained not only a twenty-eight year old but also a fifty-five year old employee in Vezza's region. This is not indicative of the systematic purging of older employees required for outrageous behavior.

Similarly, the undisputed evidence demonstrates that the majority of Britrail's employees, as before the reorganization, continue to be individuals in the class protected by the ADEA. In *Dreyer,* the number of employees over fifty was reduced from half the total workforce to a third, yet that evidence was found insufficient to support a claim of willfulness. *Dreyer* had the added factor that evidence demonstrated some, but not all, employees had accepted

11. Although in some jurisdictions the willfulness standard on summary judgment differs from that to award punitive damages, in this jurisdiction, the willfulness standard for statute of limitations purposes is the same as that for

awarding damages. *City of Mt. Lebanon,* 842 F.2d at 1486.

12. The EEOC concedes this is the proper standard. EEOC Brief at 12.

early retirement voluntarily. 801 F.2d at 658. However, in *Dreyer*, the reorganization put older workers in the minority (when they previously made up fifty percent of the workforce) and the record did not show all terminated employees were offered early retirement benefits.

In the case *sub judice*, sixty percent of Britrail's present workforce is still in the protected class. Unlike *Dreyer*, there is no evidence Britrail did an "age analysis" or that management was concerned with having an "old" workforce. 801 F.2d at 65.

Turning to other factors in this analysis, it is not without significance that the EEOC, an agency invested with the duty to enforce the ADEA and with vast experience in litigating such claims, did not allege willfulness in its original complaint. When it did allege willfulness it did so without *alleging any new facts or conditions* to support it. Willfulness cannot be supported by evidence that is merely duplicative of that sought for any violation of the ADEA. *Bartek*, 882 F.2d at 745. The EEOC failed to demonstrate how its evidence is not duplicative of that needed to prove a regular violation of the ADEA.

There is no genuine issue of material fact as to Britrail's willfulness.[13] Therefore, the three year statute of limitations does not apply. As previously noted, the complaint was not timely filed under the two year statute of limitations.

*Conclusion*

For the foregoing reasons, Britrail's motion for summary judgment is granted.

---

**13.** This statement is made with an awareness of the Third Circuit's presumption against premature grants of summary judgment when willfulness is an issue. It is understood willfulness ordinarily is a question of fact to be left to the jury whenever reasonable minds could differ in characterizing the employer's intent. *City of Mt. Lebanon*, 842 F.2d at 1487.

In the case *sub judice* there is no question of credibility as there was in *Mt. Lebanon*. Moreover, in that case, the policy adopted by the employer was challenged as violative of the ADEA. The standard applied was whether the company knew or showed reckless disregard of whether its policy was prohibited by the ADEA. *City of Mt. Lebanon*, 842 F.2d at 1486. The company's knowledge was at issue and could only be resolved by determinations of credibility.

In contrast, the EEOC acknowledges this is a disparate impact case and outrageous behavior is the standard. The question to be resolved here is whether Britrail's conduct was outrageous. The record and the case law do not support an inference that the conduct complained of here, even if true, was outrageous.