882 F.2d 739
 50 Fair Empl.Prac.Cas. 964,
51 Empl. Prac. Dec. P 39,249
Joseph P. BARTEK
v.
URBAN REDEVELOPMENT AUTHORITY OF PITTSBURGH.
Joseph P. BARTEK,
v.
URBAN REDEVELOPMENT AUTHORITY OF PITTSBURGH.
 Nos. 88-3463, 88-3485.
 United States Court of Appeals,
Third Circuit.
 Argued March 3, 1989.
Decided Aug. 11, 1989.
Rehearing and Rehearing In Banc Denied Oct. 18, 1989.
 
 Andrienne Johnson (argued), Allan E. MacLeod, Coraopolis, Pa., for appellant, cross-appellee.
 Michael J. Scott (argued), Asst. Gen. Counsel, Pittsburgh, Pa., for appellee, cross-appellant.
 Before HIGGINBOTHAM, STAPLETON and COWEN, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 This is both an appeal and cross appeal from the judgment of the district court awarding compensatory and liquidated damages in an age discrimination suit. Upon our review of the record, we find sufficient evidence to support a jury finding of discrimination. We find, however, insufficient evidence to support a jury finding of willful discrimination. Accordingly, we will affirm that part of the district court's judgment order awarding compensatory damages, but will vacate that portion of the judgment order awarding liquidated damages.
 
 I.
 
 2
 Joseph P. Bartek ("Bartek") brought this suit under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. Sec. 621 et seq. (1982 & Supp. IV 1986) ("ADEA"), against his employer, the Urban Redevelopment Authority of Pittsburgh, Pennsylvania ("URA"), a quasi-governmental agency that receives substantial federal funding through the Department of Housing and Urban Development.
 
 
 3
 In his amended complaint, Bartek, then age 65, alleged that he began his employment with URA in 1964 as a cost estimator, and was promoted in 1966 to the position of Deputy Director of the Housing Rehabilitation Department. In March, 1979, the Executive Director of the URA, Paul Brophy ("Brophy"), informed Bartek that his position was being eliminated for budgetary reasons, and that he had the choice of resigning or taking a subordinate position. Bartek alleged that he took the latter option conditional upon his being fairly considered for a promotion in the future, and that the URA had subsequently denied him certain job promotions on the basis of his age in violation of the ADEA.
 
 
 4
 Issues of liability were tried before a jury. Upon answering special interrogatories, the jury returned verdicts in favor of Bartek on three of the seven counts in his complaint. With respect to count I, the jury found that the URA willfully discriminated against Bartek in its promotion of Mary Marquis Evenson ("Evenson") to Administrator of the Mortgage/Home Improvement Loan Program ("HILP") on January 3, 1984. With respect to count V, the jury found that URA willfully discriminated against Bartek in its promotion of Evenson to Residential Finance Section Manager on January 1, 1985, in its promotion of Joseph Pivarnik ("Pivarnik") to Manager of the Multi-Family Program in January, 1985, and in its promotion of Joseph Fiori ("Fiori") to Administrator of the Agency/Emergency Loan Program on April 8, 1985. Finally, with respect to count VI, the jury found that URA willfully discriminated against Bartek in its promotion of John Posteraro ("Posteraro") to Manager of the Multi-Family Program on July 1, 1985.
 
 
 5
 As per agreement of the parties, the damages phase of the trial was conducted without a jury. Bartek proffered evidence to the court on the positions held by Evenson. Since the jury had found that Bartek was discriminated against in January 1984 when the URA promoted Evenson to Administrator of Mortgage/HILP and in January 1985 when the URA promoted Evenson to Residential Finance Section Manager, the court assumed, for purposes of calculating damages, that Bartek would have held these positions. Moreover, the court found that, although Evenson resigned in August 1985 and was not replaced, her position remained in the URA's administrative budget through the end of 1986, when it was eliminated as a result of the URA's restructuring. Consequently, the court awarded Bartek the difference between his salary and that of the Administrator of Mortgage/HILP in 1984, and that of the Residential Finance Section Manager in 1985 and 1986. That sum equalled $20,928. The court then awarded Bartek statutory liquidated damages, in the amount of his back pay, to reflect the jury finding that the URA had willfully violated the ADEA. See 29 U.S.C. Sec. 626(b). Bartek's total award was $41,856.
 
 
 6
 Subsequently, the URA filed motions for a judgment notwithstanding the verdict, new trial, remittitur of liquidated damages, and stay of the enforcement of the judgment pending appeal. Bartek also filed a motion to alter or amend the judgment. The district court denied both parties' motions, and these timely appeals followed. This court has jurisdiction pursuant to 28 U.S.C. Sec. 1291 (1982).
 
 II.
 A.
 
 7
 The URA's principal contention on appeal is that the district court erred in denying its motion for judgment notwithstanding the verdict since there was no evidence upon which the jury could have found that it violated the ADEA. We review a district court's denial of a motion for judgment notwithstanding the verdict to determine whether the evidence and justifiable inferences most favorable to the prevailing party afford any rational basis for the verdict. Kinnel v. Mid-Atlantic Mausoleums, Inc., 850 F.2d 958, 961-62 (3d Cir.1988).
 
 
 8
 The ADEA broadly proscribes discrimination against any individual over 40 with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. Sec. 623(a); see id. Sec. 631(a) (Supp. IV 1986). To recover, "a plaintiff must prove by a preponderance of the evidence that age was the determinative factor in the employer's decision." Berndt v. Kaiser Aluminum & Chemical Sales, Inc., 789 F.2d 253, 256 (3d Cir.1986) (citation omitted).
 
 
 9
 In allocating the burdens of proof in an ADEA suit alleging disparate-treatment on the basis of circumstantial evidence, we follow the formula enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), for cases brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. (1982). See Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 897 (3d Cir.) (in banc), cert. dismissed, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Under that formula,
 
 
 10
 [f]irst, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 
 
 11
 Burdine, 450 U.S. at 252-53, 101 S.Ct. at 1093 (citations omitted).
 
 
 12
 The opportunity, and thus the ultimate burden, either to prove that a discriminatory reason more likely than not motivated the employer's conduct, or to show that the employer's proffered explanation is unworthy of credence, lies with the plaintiff. While recent Supreme Court jurisprudence in the area of employment discrimination has been particularly volatile, no shadow has been cast on the McDonnell Douglas/Burdine allocation of burdens. See Price Waterhouse v. Hopkins, --- U.S. ----, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989) (in a disparate-treatment suit, where an employer uses both legitimate and illegitimate criteria, "the plaintiff retains the burden of persuasion on the issue [of] whether gender played a part in the employment decision"); Wards Cove Packing Co., Inc. v. Atonio, --- U.S. ----, 109 S.Ct. 2115, 2126, 104 L.Ed.2d 733 (1989) (where an employer meets the burden of producing evidence of a business justification in a disparate-impact case, the persuasion burden remains with the plaintiff to disprove the purported rationale); Patterson v. McLean Credit Union, --- U.S. ----, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989) (where an employer proffers a legitimate nondiscriminatory reason for its conduct in an action brought under 42 U.S.C. Sec. 1981, the plaintiff "retains the final burden of persuading the jury of intentional discrimination").
 
 
 13
 We find, after a careful review of the record, that there was sufficient evidence from which the jury could reasonably have concluded that age was a determinative factor in URA's decision not to promote Bartek. It is undisputed that Evenson, age 28, was promoted to the position of Administrator of Mortgage/HILP over Bartek, age 62. Bartek testified that he had met the listed qualifications for the position of Administrator of Mortgage/HILP, given that he had a bachelor's degree in business administration, had three years experience in a supervisory capacity and, prior to 1979, had coordinated program activities involving the URA, lenders, contractors, homeowners and others. Appellee's Appendix ("App.") at 258-59. The justification given by Brophy for appointing Evenson over Bartek was that she had expertise in finance. Id. at 492-94. Upon cross-examination, however, Brophy conceded that this position did not require the ability to make complex calculations, but rather merely consisted of ensuring that mortgage and home improvement loans met standard guidelines that were already prepared. Id. at 517-18.
 
 
 14
 Bartek also testified that he possessed the requisite skills for the position of Residential Finance Section Manager, which Evenson also received over him. That position required the same skills as that of Administrator of Mortgage/HILP, plus an additional two years of supervisory experience. Id. at 314-15. Moreover, Bartek testified that he met the qualifications for the position of Manager of the Multi-Family Program, which required a background in real estate, given that he possessed a real estate license. Id. at 317. Yet, both Pivarnik, age 35, and Posteraro, age 30, were promoted to that position over Bartek. It is undisputed that Bartek never had the opportunity to apply for Administrator of Mortgage/HILP or Manager of the Multi-Family Program because these positions were not posted. The URA's position at trial was that these positions did not have to be posted since they were reclassifications of former positions. Bartek countered this argument, however, by demonstrating through expert testimony that these former positions had been enhanced to such a degree that they could not be considered mere reclassifications. Id. at 781.
 
 
 15
 Finally, Bartek testified that he met the requirements for the position of Administrator of the Agency/Emergency Loan Program that Fiori, age 27, received over him. Id. at 318-19. It is undisputed that Fiori, a high school graduate, had no previous experience with URA, while Bartek had been with URA for over 20 years. The URA's justification for not promoting Bartek was that Fiori was better qualified. Yet, Bartek's expert witness testified that, out of all the persons who were promoted over Bartek, Fiori was the only one who was totally unqualified for the position he received. Id. at 775-76. Additionally, the URA claimed that Bartek's act of insubordination on February 22, 1985, was grounds for not promoting him to Administrator of the Agency/Emergency Loan Program. Bartek testified, however, that the URA's Director of Housing, Harvey Young ("Young"), had told him on that date that the position had already been filled. Id. at 441. Bartek therefore argues that his behavior had no bearing on URA's decision to deny him the promotion.
 
 
 16
 On the basis of our review of the record, we conclude that Bartek produced sufficient evidence from which a jury could rationally find that URA's purported justifications for not promoting Bartek were not credible and that, therefore, age was the determinative factor in URA's decision.
 
 B.
 
 17
 The URA next argues that it is entitled to a new trial because (1) the verdict was against the weight of the evidence; (2) remarks by Bartek and his counsel during the course of the trial unfairly prejudiced the jury; and (3) it was unfairly required to defend against eight claims. We review the district court's denial of URA's motion for a new trial for abuse of discretion. Honeywell, Inc. v. American Standards Testing Bureau, Inc., 851 F.2d 652, 655 (3d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 795, 102 L.Ed.2d 787 (1989).
 
 
 18
 With respect to URA's first contention, it argues that the jury was influenced by matters outside the scope of the evidence, such as sympathy, prejudice and conjecture, and that the evidence on the record is insufficient to support the jury's verdict. We disagree. Based on our review of the record in the preceding subsection of this opinion, the evidence that Bartek proffered to prove that age was a determinative factor in URA's denying him a promotion provided a rational basis to support the jury finding of discrimination.
 
 
 19
 Next, the URA contends that, despite the district court's admonishment, Bartek's counsel twice mentioned in her opening statement that Bartek was "demoted" in March 1979, and repeatedly referred to URA as engaging in "abrupt terminations." URA further argues that Bartek's testimony, to the effect that there would be job openings at URA "with all the people that were going to be leaving due to indictments and so on," Appellee's App. at 430, was unduly prejudicial to its defense.
 
 
 20
 It is undisputed that the parties had stipulated that the term "demoted" would not be used to describe Bartek's acceptance of a subordinate position rather than resignation in March 1979. Although Bartek's counsel erred in using that term, we find that her error was harmless because Bartek's decision was adequately explained in the course of his testimony. Id. at 246. Moreover, while the parties had stipulated that the term "abrupt terminations" would not be used, counsel for the URA used the term during cross-examination of Bartek's expert witness, id. at 800, and, therefore, URA cannot claim any prejudice from the use of that phrase. Likewise, after Bartek made the statement about indictments of URA's personnel, counsel for URA, when presented with the opportunity, waived his right to have the court explain to the jury that Bartek's statement was irrelevant. Id. at 435.
 
 
 21
 Finally, the URA avers that it was unfairly prejudiced by having to defend against eight claims in one trial. It argues that, because of the amended complaint, it was forced to defend against seven additional claims unrelated in law and in fact. We find no merit to this argument. The seven counts that ultimately went to the jury all dealt with the same law--a violation of the ADEA--and arose from the same set of facts--URA's treatment of Mr. Bartek between 1979 and 1986. Therefore, the court acted within its discretion to permit the amended complaint and joinder under Fed.R.Civ.P. 15(a) and 18(a).
 
 C.
 
 22
 The URA's final contention is that the district court erred in its denial of remittitur of liquidated damages on grounds that the evidence proffered by Bartek was insufficient to support a jury finding that the URA had violated the ADEA willfully. Our standard of review in this instance is the same as that for denial of a judgment notwithstanding the verdict. We must review the record in the light most favorable to the nonmoving party, and affirm the denial of the motion "unless the record is 'critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief.' " Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 921 (3d Cir.1986) (citation omitted).
 
 
 23
 The analysis of the willfulness issue in this case is guided by this Court's decision in Dreyer v. Arco Chemical Co., Div. of Atl. Richfield, 801 F.2d 651 (3d Cir.1986), cert. denied, 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987), where we set forth a standard for determining willfulness in cases alleging disparate treatment in discrete employment situations that we believe comports with the Supreme Court's enunciation in Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 125-30, 105 S.Ct. 613, 623-26, 83 L.Ed.2d 523 (1985); accord McLaughlin v. Richland Shoe Co., 486 U.S. 128, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988).
 
 
 24
 In Dreyer, we noted that the Thurston standard of determining willfulness--if an employer either knew that its conduct violated the ADEA or showed reckless disregard for the ADEA's prohibitions--was apt for those situations where the employer adopts a policy that violates the ADEA.[1] We concluded, however, that the application of the Thurston rule to cases alleging disparate treatment in an individual employment context would produce the undesirable effect of permitting the recovery of liquidated damages whenever there was a violation of the ADEA. Dreyer, 801 F.2d at 656-57; accord Anastasio v. Schering Corp., 838 F.2d 701, 707 (3d Cir.1988).
 
 
 25
 Keeping with the rationale of Thurston, we therefore concluded that, in cases involving an employer's conduct against an individual employee, a finding of a willful violation of the ADEA had to be supported by evidence of outrageous conduct that was not merely duplicative of that evidence needed for awarding compensatory damages. Dreyer, 801 F.2d at 658. We noted that liquidated damages might be justified where there is evidence of an employer's (1) systematic purging of older employees, (2) discharging an employee at a time that would deny her or him an imminent pension, or (3) previous violation of the ADEA. We noted, however, that no paradigm of conduct warranting liquidated damages existed, and that "the appropriateness of the award will be dependent upon an ad hoc inquiry into the particular circumstances." Id.
 
 
 26
 Although Bartek initially concedes that the district court properly charged the jury under the Dreyer standard, he proceeds to argue that "[i]f URA had shown good faith and reasonable grounds for believing it did not violate the ADEA, then a finding of willfulness would not have been appropriate." Reply Brief for Appellant at 15-16. Our decision in Dreyer, however, expressly rejected any application of the "good faith" standard in the absence of a company policy to discriminate against older employees. We held specifically that
 
 
 27
 [w]here an employer makes a decision such as termination of an employee because of age, the employer will or should have known that the conduct violated the [ADEA]. Nonetheless, in order that the liquidated damages be based on evidence that does not merely duplicate that needed for the compensatory damages, there must be some additional evidence of outrageous conduct.
 
 
 28
 Dreyer, 801 F.2d at 658.
 
 
 29
 Bartek, in an apparent abandonment of his concession that the Dreyer standard is applicable, asserts that he proffered sufficient evidence that the URA engaged in a policy of discrimination against older employees. The only evidence, however, proffered by Bartek to this effect was his testimony concerning passing conversations he had with other older workers about a perceived trend within URA to promote younger employees. While the perceptions of other employees within the ADEA's protected class may be relevant, mere viewpoints, without more, are insufficient to support a finding that the URA had a policy of denying promotions to older workers.
 
 
 30
 This action was properly treated by the district court as one involving disparate treatment in an individual employment context and, therefore, the willfulness finding must be supported by sufficient evidence of outrageous conduct. Almost all of the evidence that Bartek contends is demonstrative of outrageous conduct actually pertains to the "knew or showed reckless disregard" standard of Thurston, and is thus not germane to this case. Upon our examination of the remaining evidence proffered by Bartek, we conclude that it fails to meet that "minimum quantum" necessary to support a finding of a willful violation of the ADEA.
 
 
 31
 For example, Bartek contends that when he spoke to Brophy about his failure to be promoted, Brophy told him to quit if he did not like the way he was being treated. The record does reflect that Brophy told Bartek: "Why don't you look around for another job ... if you are that unhappy here." Appellee's App. at 535. While some persons might find such a statement to be insensitive, we do not find that such a statement constitutes outrageous conduct.
 
 
 32
 Bartek's only other substantive claim of outrageous conduct is that the URA engaged in malicious actions against him. First, he contends that after he filed his discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), the URA legal staff denied him all information normally given to employees. Yet, the record shows that Bartek was merely told that since he was pressing a lawsuit against the URA, all requests for information would be entertained only through the EEOC. Appellee's App. at 428.
 
 
 33
 The second malicious act complained of was the decision made by Young to suspend Bartek for five days. Young testified that the reason for the suspension was that Bartek had approached him shouting that Young had bought his job and that Bartek wanted to know how he could also buy a job. Id. at 561. When Young told him to go back to work, Bartek shouted that the only reason Young had his position was because he was black. Id. at 562. While Bartek contends that he never made the alleged racial statement, and assuming arguendo that he did not, we nevertheless find that an employee's shouting at a supervisor and ignoring his order to return to work is certainly insubordination, and thus legitimate grounds for a suspension.
 
 
 34
 On the basis of the record before us, we find that Bartek failed to proffer probative evidence of the alleged outrageous conduct on the part of the URA. Accordingly, we cannot sustain the award of liquidated damages in this case.
 
 III.
 
 35
 Bartek appeals from the district court's order denying his motion to alter or amend judgment on the basis (1) that the court erred in placing the burden of persuasion on Bartek to prove his entitlement to back pay after 1986; (2) that the court erred in failing to award back pay in count I after 1985 and in count VI altogether; and (3) that the court erred in not awarding him front pay. We review the district court's fashioning of relief for abuse of discretion. Commonwealth of Pennsylvania v. Local Union 542, Int'l Union of Operating Engineers, 807 F.2d 330, 334 (3d Cir.1986). The court's factual findings shall not be set aside unless clearly erroneous. Cooper v. Tard, 855 F.2d 125, 126 (3d Cir.1988); Fed.R.Civ.P. 52(a).
 
 A.
 
 36
 With respect to his first argument, Bartek avers that the district court erred in not calculating back pay damages after December 31, 1986, when the position of Residential Finance Section Manager was eliminated pursuant to URA's restructuring. Bartek contends that the district court erroneously placed upon him the burden of proving that a position comparable to that of Residential Finance Section Manager existed after its elimination. He asserts that Green v. USX Corp., 843 F.2d 1511 (3d Cir.1988), vacated on other grounds, --- U.S. ----, 109 S.Ct. 3151, 104 L.Ed.2d 1015 (1989), places the risk of speculation upon the employer who discriminated, and thus the URA should have had the burden of proving that no position comparable to that of the Residential Finance Section Manager existed after reorganization.
 
 
 37
 It is well settled that "[t]he risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim." Goss v. Exxon Office Sys. Co., 747 F.2d 885, 889 (3d Cir.1984) (citing Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 564, 51 S.Ct. 248, 251, 75 L.Ed. 544 (1931)). Our decision in Green followed that principle. There we held that the risks of speculation in an award of front pay was upon the employer, since it was the employer's wrongdoing that had precluded victims of employment discrimination from positions for which they had applied. Id. at 1531-33.
 
 
 38
 While the risk of any speculation in the calculation of damages is upon the employer, the victim has the initial burden of identifying those positions upon which an award of damages is to be based. See Rodriguez v. Taylor, 569 F.2d 1231, 1239-40 (3d Cir.1977) (burden on individual discriminatee to identify those positions denied him), cert. denied, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). It is undisputed that after Evenson resigned in August 1985, the position of Residential Finance Section Manager remained vacant throughout 1986. At the end of that year, that position was eliminated. Bartek argues, nevertheless, that back pay damages should have been awarded to him after 1986 based upon a position comparable to that of Residential Finance Section Manager. Yet, Bartek proffered insufficient evidence to support a finding that a similar position existed after URA's reorganization. Therefore, we conclude that the district court did not abuse its discretion in denying Bartek back pay damages after 1986.
 
 B.
 
 39
 Bartek's second contention on appeal is that the district court erred in failing to count damages in count I after 1985, and in count VI altogether. With respect to count I, the court noted that the jury had found that Bartek was unlawfully denied the position of Administrator of Mortgage/HILP in January 1984. Evenson had instead filled that position. The jury had also found, in count V, that Bartek was unlawfully denied the Residential Finance Section Manager position, which Ms. Evenson was promoted to fill, in January 1985. As the court correctly pointed out, the only way to award back pay damages consistent with the jury findings would be to assume that Bartek would have been appointed Residential Finance Section Manager in January 1985. Therefore, the district court did not err in awarding Bartek back pay in count I only until the end of 1984.
 
 
 40
 With respect to the count VI, Bartek argues that the court erred in not awarding him back pay damages for the position of Manager of Multi-Family Programs that the jury found was discriminatorily denied him in July 1985. He contends that each count could have been a separate lawsuit, and although joined, each count remained a separate cause of action. We disagree. By seeking an amendment to add the additional counts, Bartek sought to have a jury examine the entire case as a whole. In so doing, the jury made factual findings and the district court had to make its award of back pay damages consistent with those findings. The court's ruling that it had to assume, based on the jury's verdict in count V, that Bartek would have been promoted to the Residential Finance Section Manager position in January 1985, and that back pay damages had to be based on that position for the years 1985 and 1986, was not an abuse of discretion.
 
 C.
 
 41
 Finally, Bartek contends that the district court erred in denying him an award of front pay. We have held in the past that an award of front pay is appropriate where a victim of employment discrimination will experience a loss of future earnings because he or she cannot be placed in the employment position that was unlawfully denied. Maxfield v. Sinclair Int'l, 766 F.2d 788, 795-97 (3d Cir.1985), cert. denied, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). Under the facts of this case, however, there was no position in existence that Bartek was being unlawfully denied at the time of judgment. The court found that the position of Residential Finance Section Manager was the last position that was discriminatorily denied Bartek. That position was eliminated at the end of 1986, and Bartek failed to identify a comparable position that existed after that time. Since Bartek was not precluded from a position that he was entitled to at the time of judgment, the district court correctly denied him front pay damages.
 
 IV.
 
 42
 For the foregoing reasons, we will affirm the district court's order of June 14, 1988, insofar as it denies the URA's motion for judgment notwithstanding the verdict and a new trial. We will reverse that order, however, with respect to its denial of remittitur of liquidated damages. Accordingly, we will vacate that portion of the district court's judgment order awarding liquidated damages to Bartek. We will affirm the district court's order of June 16, 1988, denying Bartek's motion to alter or amend the judgment.
 
 
 
 [1]
 For example, in EEOC v. Westinghouse Electric Corp., 869 F.2d 696, 711-14 (3d Cir.1989), petition for cert. filed, 57 U.S.L.W. 3755 (U.S. May 16, 1989) (No. 88-1770), we applied the Thurston standard to determine whether corporate pension and severance pay plans for retirement-eligible employees were in willful violation of the ADEA