Carmen Marta **RAMIREZ RAMIREZ,** et al., Plaintiffs,

v.

**THE CHASE MANHATTAN BANK, N.A., Defendant.**

**No. CIV. 94–1122(RLA).**

United States District Court, D. Puerto Rico.

July 20, 2000.

---

Isabel Pico Vidal, Hato Rey, PR, for Plaintiffs.

Luis A. Oliver Fraticelli, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendant.

### ORDER IN THE MATTER OF PLAINTIFF'S ENTITLEMENT TO RELIEF SUBSEQUENT TO SALE OF DEFENDANT'S OPERATIONS

ACOSTA, District Judge.

Present before the Court for disposition is a Motion in Limine filed by defendant THE CHASE MANHATTAN BANK, N.A. ("CHASE") seeking to limit plaintiff's entitlement to relief to **February 28, 1999** when it ceased all operations in Puerto Rico. Plaintiffs have vigorously objected to the request on both procedural and substantive grounds. Additionally plaintiffs have moved the Court to strike the affidavit submitted by defendant in support of the Motion in Limine.

### A. PROCEDURAL BACKGROUND

Plaintiff CARMEN MARTA RAMIREZ RAMIREZ instituted these proceedings challenging her termination during defendant's reduction in force ("RIF") and the eventual cessation of operations in Puerto Rico as age based. Additionally plaintiff challenges the nature of the position she was assigned prior to her dismissal and claims breach of employment contract.

### B. THE FACTS

The following facts relevant to the issues at hand appear alleged in the complaint.

1. Plaintiff, CARMEN MARTA RAMIREZ commenced working with CHASE in **June 1965.**

2. During **1983–1985** plaintiff held the position of Administrative Assistant in one of the divisions of the business lines in commercial loans.

3. From **1985 to 1992** plaintiff worked for PFIZER INTERNATIONAL BANK ("PFIZER") pursuant to a Technical Service Agreement between PFIZER and CHASE.

4. According to the aforementioned Agreement, CHASE employees would return to a comparable position at CHASE after concluding their employment with PFIZER.

5. In **1992** PFIZER closed operations in Puerto Rico.

6. Plaintiff returned to CHASE and was assigned to the Treasury Operations Division where she remained from **July 1992** until her termination effective **March 31, 1993** at age 48.

7. According to plaintiff while at PFIZER she held the position of Assistant–Manager Grade 5 a professional or management category whereas at CHASE she was assigned a Grade 11 clerical category position as an Administrative Assistant.

### C. AFFIRMATIVE DEFENSE

Plaintiff's main argument in opposition to CHASE's request is that the limitation of damages is an affirmative defense not raised until now and hence waived by CHASE. Defendant on the other hand, contends that back pay is part of the damages which plaintiff carries the burden of proving.

The inherent difficulties in identifying a particular matter as an affirmative defense have been commonly recognized. Some courts have found that if the matter is an element inherent to plaintiff's claim a mere denial will suffice "to put those matters in issue". 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1271 at 442 (2d ed.1990).

A more pragmatic approach when confronted with this situation is to ascertain which party carries the burden of proof on that particular issue.

[A]ll or most of the relevant information on a particular element of a claim is within the control of one party or that one party has a unique nexus with the

issue in question and therefore that party should bear the burden of affirmatively raising the matter.

*Id.* at 445 (footnote omitted) (1990)

Further, whether the Court will allow a defense to be raised during a later stage of the proceedings will be evaluated by "examin[ing] the totality of the circumstances and mak[ing] a practical, commonsense assessment about whether Rule 8(c)'s core purpose—to act as a safeguard against surprise and unfair prejudice—has been vindicated." *Williams v. Ashland Eng'g Co., Inc.*, 45 F.3d 588, 593 (1st Cir.1995) *rev'd on other grounds by Carpenters Local Union No. 26 v. U.S. Fidelity & Guar. Co.*, 215 F.3d 136 (1st Cir.2000).

In this case it behooves the defendant to come forth and present evidence of the sale of its operations and to establish that plaintiff would have not survived the sale since it bore the risk of speculation on an award of damages. *Bartek v. Urban Redevelopment Auth. of Pittsburgh*, 882 F.2d 739, 746 (3rd Cir.1989).

■ Therefore, plaintiff's limitation of damages due to the closing down of all of CHASE's operations subsequent to the filing of the complaint constitutes an affirmative defense under the circumstances present in this litigation which brings us to the next question. Would allowing defendant to bring this matter up at this stage of the proceedings constitute surprise and unfair prejudice to the plaintiff?

### 1. Surprise

Plaintiff claims total ignorance of the sale and alleges she was not advised of this matter until the Settlement Conference held on February 24, 2000.

However, CHASE's departure did not occur overnight. On the contrary, plaintiff's claims are based precisely on the recurrent steps taken by the Bank to reduce its business operations in this jurisdiction which reductions were known to plaintiff since the complaint was filed.

In the Joint Memorandum filed on **October 12, 1994** defendant specifically indicated that plaintiff's termination resulted from a reduction in force process initiated in **1985** at which time CHASE had approximately 1,100 employees. The document explains that thereafter, "[i]n **1991**, Chase sold all of its retail branches, except for the one in Hato Rey... and in **1992** it sold all of its mortgage banking operations" (docket No. 16 at 4) which led to further cut backs. "As a result of these reductions in its labor force, at present [1994] Chase has less than 300 employees; approximately **28%** of the Chase's 1,100 employment positions in **1985**." [*id.* at 5] (emphasis ours).

In its Motion for Summary Judgment served in **1997** defendant pointed out that plaintiff was aware of this 75% reduction in force prior to returning to CHASE in **1992**. (docket No. 100 at 13).

In her opposition to the Motion in Limine plaintiff submitted a local newspaper clipping dated **April 22, 1998** which reported the sale. According to the article CHASE had **215** employees at the time but "the number of persons that will lose their jobs" had not yet been determined.

Hence, contrary to plaintiff's portrayal this transaction was not carried out overnight and without prior warning. It was a much publicized sale which culminated in a continuous process of reduction of business and personnel dating back 13 years and reported in the media. Plaintiff cannot sit back and scream foul play because she failed to see the writing on the wall.

### 2. Prejudice

Plaintiff also claims unfair prejudice by the delay in raising the issue because discovery has concluded. However, the purpose behind the discrimination statutes is to make plaintiff whole, that is, put her in a position as closely as possible to the one she would be absent discrimination. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982); *Kolb v.*

*Goldring, Inc.,* 694 F.2d 869, 872 (1st Cir. 1982).

In this case plaintiff demands relief until expected retirement age which translates into approximately 20 years of back and future pay. ADEA provisions are not meant to give plaintiff an unfair advantage over employees who succumbed to a sale since "it would catapult [her] into a better position than [she] would have enjoyed in the absence of discrimination." *Ford Motor Co. v. EEOC,* 458 U.S. at 234, 102 S.Ct. 3057.

Ordinarily relief in discrimination suits will cease in the event that the plaintiff would have been the victim of a similar fate, i.e ., termination, due to subsequent business developments.

> [T]he person discriminated against should only recover damages for the period of time he would have worked but for wrongful termination; he should not recover damages for the time after which his employment would have ended for a nondiscriminatory reason.

*Blackburn v. Martin,* 982 F.2d 125, 128–9 (4th Cir.1992). *See also Bartek,* 882 F.2d at 740 (backpay award ceased when position at issue eliminated); *EEOC v. The Monarch Mach. Tool Co.,* 737 F.2d 1444, 1452 (backpay ends upon sale of business); *Hill v. Spiegel, Inc.,* 708 F.2d 233, 238 (6th Cir.1983) (period for calculating backpay for unlawful termination ended when facility closed).

In the particular case before us CHASE ceased operations altogether as of **February 1999.** It is plaintiff's contention that absent her age-based dismissal she would have been offered employment by BBV and that she would have continued to work thereat until her retirement at age 65.

In order to be entitled to relief subsequent to the sale of the employer's assets plaintiff must (1) identify the position she would have been occupying but for the discriminatory event and (2) submit evidence that it continued to exist after the transaction.

While the risk of any speculation in the calculation of damages is upon the employer, the victim has the initial burden of identifying those positions upon which an award of damages is to be based. *Bartek,* 882 F.2d at 746.

Plaintiff has attempted to meet this burden by submitting evidence that seven (7) administrative assistants employed with CHASE in 1993 are now employed with BBV. However, the position of administrative assistant is not relevant to the back pay discussion. Even though at the time of her termination plaintiff was employed as an administrative assistant this entire litigation is based precisely on the alleged wrongful appointment i.e., demotion to that position rather than a managerial position.

The complaint specifically claims that upon her return from PFIZER plaintiff was assigned to a clerical rather than a management category. Complaint ¶¶ 16, 19 and 38. Further, plaintiff's attack on the validity of the RIF as applied to her is based on the fact that while she was denied a managerial position a 28 year old trainee was recruited and assigned an officer position in her Department.

Faced with these facts the Court is hard put to consider relevant the aftermath relating to the positions of administrative assistants subsequent to the sale. Further, the Treasury Operations Division— where plaintiff worked and where the coveted position was assigned—was dissolved and none of its employees remained with the BBV.

According to the declaration of JAMES J. McENTEE, CHASE's Vice President and Human Resources Executive for the Latin America Region, CHASE sold part of its operational assets in Puerto Rico to BBV through an asset purchase agreement executed **on April 21, 1998.** The Treasury Operations Group, where plaintiff last worked was not part of the transaction. At the time of the sale CHASE had 216 employees working locally. As part of the

agreement BBV offered employment to those employees working in the acquired departments [a total of 57 employees] but none from the Treasury Operations Group. We quote from MR. McENTEE's sworn statement:

> 6. The remaining employees were terminated by Chase as of **October 1, 1998,** except for a group of approximately 89 employees (from various departments in the Operations Division) who remained to provide interim support to BBV on operational matters until approximately April of 1999.
>
> 7. The particular interim support provided to BBV by the Treasury Operations Group ended in **February 1999.** Accordingly, the Treasury Operations Group was fully dissolved, and no Treasury Operations Group employees remained employed by Chase, as of the end of February 1999.

(Emphasis ours).

█ Therefore, for purposes of this discussion the relevant position is the one occupied by the 28 year old trainee in the Treasury Operations Group and not administrative positions in other CHASE departments. Assuming that plaintiff were to prevail at trial on the inadequacy of the appointment to the clerical position and on her claim of termination based on her age there is no evidence in the record that the position she aspired to survived the sale. Under these circumstances back pay relief would be limited, at best, to **February 1999** when the Operations Group was dissolved.

### D. CONCLUSION

While the Court concedes that it would have been more expedient for defendant to have formally announced this defense in a timely fashion, it is also true that precluding evidence of the sale under the circumstances of this case would result in an unwarranted windfall for plaintiff.

Based on the foregoing, the Motion in Limine (docket No. 113) [1] is disposed of as follows:

In the event that plaintiff wishes to conduct expedited discovery limited to the status of the managerial position she claims she was entitled to subsequent to the sale to BBV she shall file a motion itemizing the additional discovery **no later than August 4, 2000.**

If no additional discovery is requested by plaintiff by the aforementioned deadline, defendant's Motion in Limine precluding relief subsequent to **February 1999** shall be granted.

It is further ORDERED that Plaintiff's Motion to Strike from the Record Chase's Declaration from Unannounced Witness (docket No. 126) is **DENIED.** [2]

This Order shall be notified by **FAX** and mail.

IT IS SO ORDERED.

---

**1.** *See* Plaintiffs' Memorandum in Opposition... (docket No. **117**); Reply... (docket No. **123**).

**2.** *See also* Memorandum in Response to Defendant's Motions and in Support of Plaintiffs' Motion to Preclude a Witness (docket No. **127**).